[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for dissolution of marriage was tried on June 18, 2002. Both parties were represented and were the only witnesses. They presented evidence on financial issues including alimony, division of assets and liabilities, and counsel fees. The court has considered all of the statutory criteria for the orders to be issued. The statutory criteria will not be restated here. The court makes the following findings of fact and issues the following orders.
The parties were married on July 1, 1995. There are no minor children of the marriage. The plaintiff wife has two adult children from a prior marriage. The defendant husband has three adult children from a previous marriage. The court has jurisdiction over the marriage, both parties having lived in Connecticut for more than one year prior to the bringing of this action. The parties have not been the recipients of public assistance during the period of the marriage.
The plaintiff wife is 51 years old and is in good health. She holds a bachelors degree and a masters degree in reading education. She is certified to teach in Connecticut and Massachusetts. She is employed by the City of Meriden as a teacher at an annual salary of $43,576. At about the time of the marriage, the plaintiff owned the following assets with the following net values:
 95 Circuit Street $141,077 Lot No. 1 Hanover $ 81,148 Arthur Good-Capital Reserve $ 16,616 Arthur Good-IRA Rollover $ 28,912 1994 Toyota and 1998 Hyundai $ 10,000
TOTAL $277,753 CT Page 9354
The defendant husband is 55 years old and is in good health. He holds a bachelor's degree, a master's degree, and a law degree. He is employed by United Technologies Corporation as an attorney with an annual salary of $128,908. At about the time of the marriage the defendant owned the following assets with the following net values:
 93 Boulter Road, Wethersfield $161,555 Baird Mutual Funds $ 12,000 Vanguard IRA $ 44,252 NML Variable Annuity $ 14,094 UTC 401k $354,264 1994 Lincoln Continental $ 30,000 NML life insurance cash value $ 19,769 1989 boat and trailer $ 13,000
TOTAL $648,934
At about the time of the marriage, the defendant owned options to purchase 2958 shares of stock in United Technologies at various prices, all having a value of $60,584. These stock options were all exercised during the marriage and resulted in gross income to the defendant of approximately $400,000 which was used for family purposes. At present, the defendant is the owner of the following stock options at United Technologies Corporation, all of which were granted during the marriage:
 Shares Grant Date Price
3000 2/5/96 $25.00/Share 2000 2/3/97 $34.50/Share 150 10/1/99 $57.937/Share
Although the exact value of these options was not established at trial, the defendant conceded that they would be worth roughly $200,000 at the current price of UTC stock.
At the time of the marriage, the defendant had been employed at United Technologies for 27 years and was vested in a UTC defined benefit pension plan. The increase in value of this pension during the marriage was not established at trial.
The parties own the additional assets which are shown on Schedule A attached hereto.
Immediately prior to the marriage, the plaintiff was living in Hanover, Massachusetts with her two children, Kristen and Derek. Kristen was a student at Princeton University, and Derek was a student in high school. Her marriage to the children's father had ended in divorce and CT Page 9355 she was raising the children without any assistance from her former husband. She owned her own home and was teaching school.
Immediately prior to the marriage, the defendant was living in Wethersfield with his three children, Kristen, and Kevin and Kelly, who are twins. Kristen was in 7th grade, and the twins were in 5th grade. His wife, the mother of his children, had died after a 5-year battle with cancer. During this 5-year time the defendant had received a great deal of help with the child-rearing from the children's grandparents on both sides.
The parties had a relatively short courtship before deciding to marry and meld their families in a new home purchased in Wethersfield following the sale of the homes of the parties. The melding of the two families was difficult from the beginning. The defendant turned over virtually all of the child-rearing to the plaintiff who reasonably had believed that the defendant would be more an active participant in the family. The defendant's children were not used to the plaintiffs firm but loving stye of parenting. They were spoiled and accustomed to having their grandparents catering to their needs. Disputes developed between the plaintiff and the defendant's children. Although the defendant supported the plaintiff in these disputes, he was absent from the home so much that he was ineffective in convincing the children to cooperate with the plaintiff
During the summer of 2000 the parties discussed taking a family vacation to help heal some wounds which had developed. The defendant insisted that the plaintiffs children not come on the trip, while the plaintiff insisted that her children be included. No resolution was reached, and the parties took separate vacations with their own children. Relations between the parties were strained as a result.
On June 13, 2001 the plaintiff told the defendant that they needed to decide if they still loved each other. The defendant responded that the marriage had ended "last year when you refused to go on vacation with me and my children." Within a few days the plaintiff discovered evidence that the defendant had been having an affair with a former secretary who is a younger woman. This evidence came as a shock to the plaintiff who, in spite of the problems which they had been having, was determined to make the marriage work. Within a few days, the plaintiff learned that the defendant held a big party at the family home on a weekend when the plaintiff was in Massachusetts visiting friends. The defendant's girlfriend attended the party and slept in the parties' bed. The defendant called it a "Freedom from Gerry Party."
Upon her return the plaintiff confronted the defendant about his CT Page 9356 affair. The defendant admitted the affair but insisted that he still loved the plaintiff and wanted to continue with the marriage. The plaintiff was skeptical about trusting him, but she agreed to try to continue with the marriage if the defendant fulfilled certain conditions. He made an attempt to comply with the conditions but the plaintiff was skeptical about the defendant's sincerity. Soon thereafter the plaintiff found the girlfriend's notebook at the foot of the parties' bed. The notebook contained evidence that the girlfriend had taken a plane flight with the defendant and had used the plaintiffs name on her luggage tag. The defendant has continued to see the girlfriend. Based upon this sad history, the court concludes that the defendant must bear the majority of the fault for the breakdown of the marriage.
The parties own a four bedroom home at 55 Hawthorne Way in Wethersfield. The value of this marital home was the subject of dispute, with the parties giving their own wildly disparate opinions of value. There were two appraisals entered as evidence. Both were performed by certified residential real estate appraisers within the past two months. Having considered both appraisals and the opinions of the parties, the value of the marital home is found to be $450,000. There are encumbrances of approximately $210,500. Approximately $54,000 of this total is attributable to a Mercedes automobile which the defendant purchased in 2000 for $54,000. The plaintiff would like to leave the marital home on or about September 1, 2002 and return to Massachusetts. The defendant would like to remain in the marital home and pay the plaintiff for her interest.
The parties have a partial agreement about the property division. They agree that the court should 1) total the present value of their assets, 2) give credit to each party for a value equal to the value of their assets brought to the marriage, and 3) divide the assets remaining after deduction for the 1995 values credited to each party. However, the parties disagree about 1) whether the defendant's stock options granted during the marriage should be included in the division, and 2) the percentage of assets assigned to each party.
The issue of the defendant's current stock options will be resolved by excluding them from consideration as premarital assets or as assets acquired during the marriage. The options held by the defendant and exercised during the marriage were substantially greater in value than the options acquired during the marriage. It is fair and equitable that these options be disregarded from the calculation as a "wash."
The parties disagree about the percentages to be assigned to them after they are given credit for what they brought to the marriage. The plaintiff seeks a 60%-40% split in her favor, while the defendant seeks a CT Page 9357 50%-50% split. Having considered all of the statutory factors it is fair and equitable that the plaintiff receive 60% of the assets after the credits are given. The factors which favor an uneven distribution in the plaintiffs favor include the occupations of the parties, the disparity in the amount and sources of income, the needs of the parties, the opportunity of each for the future acquisition of capital assets and income, as well as the cause of the dissolution. The court's calculations of the amounts to be assigned to each party are shown on Schedule A attached hereto.
The parties differ over alimony as well. The plaintiff seeks an order that the defendant pay her $500 per week for a period of 3 years. The defendant requests that no alimony be awarded. Having considered all of the relevant facts and all of the statutory criteria, it is fair and equitable that the defendant pay to the plaintiff the sum of $35,000 in lieu of any other alimony.
The court issues the following orders:
1. The marriage of the parties is dissolved.
2. The defendant shall pay the plaintiff the sum of $35,000 in lump sum alimony. This sum shall be payable at the time the marital home is refinanced or sold as set forth below. No other alimony shall be paid by either party.
3. On or before September 1, 2002 the defendant is given the opportunity to pay to the plaintiff the sum of $135,000 (which sum is composed of $100,000 by way of property settlement shown on Schedule A and the $35,000 lump sum alimony awarded above) by refinancing the marital home at 52 Hawthorne Way, Wethersfield. If he is able to close on such financing on or before September 1, 2002, the plaintiff shall provide him with a quit claim deed of all her right, title, and interest in the property at the closing. If he is unable to pay the $135,000 on or before September 1, 2002, the property shall be listed for sale by the parties at an initial listing price of $490,000. The parties shall actively market the property for sale and shall accept any offer within 3% of the listing price. The parties shall reconsider the listing price every 60 days until the property is sold. From the proceeds of the sale shall be paid the real estate commission, usual closing costs, the unpaid balances on the mortgages, and the sum of $135,000 to the plaintiff.
4. The defendant shall immediately transfer to one of the plaintiffs IRA accounts the sum of $417,524 from his UTC 401k. This transfer shall be made pursuant to a Qualified Domestic Relations Order to be prepared by counsel for the plaintiff. The defendant shall cooperate fully in CT Page 9358 making this transfer. The court will retain jurisdiction for the purpose of carrying out this transfer.
5. The parties shall be the sole owners of the assets shown under their names on the asset distribution shown on Schedule A attached hereto and made a part hereof.
6. The defendant shall be the sole owner of all UTC stock options presently held in his name.
7. The defendant shall be the sole owner of his UTC pension.
8. The court has reviewed the personal property division proposed by each party. There does not appear to be any substantial disagreement. The parties are ordered to attempt to make this division of personal property themselves in accordance with their lists submitted to the court. If the parties are unable to agree upon this division, they are ordered to mediate this issue with Family Relations.
9. The parties shall each maintain their own medical insurance.
10. The parties shall each pay their own counsel fees.
John W. Pickard, J.
 SCHEDULE A
I. 2002 Assets Defendants Plaintiff
 1. Fidelity Accounts (Health — Farmer $17,015 CRMC) 2. Vanguard Star Fund (In Joint Names) 38,640 3. Fidelity Accounts (Former NSFC/FMTC — IRA) 51,593 4. Vanguard 403b 9,952 5. 2001 Toyota Camry 19,525 6. 1994 Toyota Corolla 4,950 7. Jewelry (Ring/Necklace — purchased 2001) 30,000 8. Baird Real Estate L.P. $5,000 9. Vanguard IRA 93,893 10. NML Variable Annuity 23,028 11. UTC 401k 981,098 12. 2002 Mercury Marquis 25,000 13. 2001 HD Motorcycle 12,000 14. 1989 Oldsmobile 2,200 15. NML Whole Life Ins. — Cash Values 45,681 CT Page 9359 16. Prudential Variable Appreciable Life 13,356 17. 52 Hawthorn Way, Wethersfield F.M.V. $450,000.00 Mortgages ($210,500.00) 119,750 119,750
TOTAL $1,321,006 291,425
 II. TOTAL 2002 Assets $1,612,431 Less: Defendant — 1995 ($ 648,934) Less: Plaintiff — 1995 ($ 277,753)
TOTAL MARITAL APPRECIATION $ 685,744
 III. Asset Distribution
Defendant — 1995 Premarital Assets $648,934 40% of Marital Appreciation $274,298 $923,232
 Plaintiff — 1995 Premarital Assets $277,753 60% of Marital Appreciation $411,446 $689,199
 ASSETS TO DEFENDANT
1. Baird Real Estate L.P. $ 5,000 2. Vanguard IRA 93,893 3. NML Variable Annuity 23,028 4. UTC 401k 563,574 5. 2002 Mercury Marquis 25,000 6. 2001 HD Motorcycle 12,000 7. 1989 Oldsmobile 2,200 8. NML Whole Life Ins. — Cash Values 45,681 9. Prudential Variable Appreciable Life 13,356 10. 52 Hawthorn Way, Wethersfield — Equity 139,500
TOTAL $923,232
 ASSETS TO PLAINTIFF
1. Fidelity Accounts (Health — Farmer CRMC) 17,015 2. Vanguard Star Fund (In Joint Names) 38,640 3. Fidelity Accounts (Former NSFC/FMTC-IRA) 51,593 4. Vanguard 403b 9,952 5. 2001 Toyota Camry 19,525 6. 1994 Toyota Corolla 4,950 7. Jewelry (Ring/Necklace — purchased 2001) 30,000 8. Cash — Refinance of 52 Hawthorn Way 100,000 9. QDRO-UTC 401k-Defendant 417,524
TOTAL $689,199
CT Page 9360